## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FRED DURAN,**

        **Plaintiff,**

      **vs.**                   **Civ. No. 23-1113  JFR/JMR**

**THE CITY OF ALBUQUERQUE, ex rel.**
**ALBUQUERQUE POLICE DEPARTMENT,**
**CHIEF OF POLICE HAROLD MEDINA,**
**Individually, and DETECTIVE WHITNEY**
**BURTON, Individually,**

        **Defendants.**

### MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint for Damages Arising From Wrongful Discharge, Improper Employment Practices, Constitutional Violations, and Breach of Contract In Lieu of Answer, filed December 15, 2023. Doc. 9.  On January 9, 2024, Plaintiff filed a Response.  Doc. 15.  On January 23, 2024, Defendants filed a Reply.  Doc. 16.  Being fully advised in the premises and the relevant law, the Court finds that Defendants' Motion is well taken and is **GRANTED**.

### I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff's Complaint contains the following factual allegations.

Plaintiff was hired as a police officer by Defendant City of Albuquerque ("City") in 2011 and was a nine-year veteran when he was terminated effective July 20, 2020.  Doc. 1-2 at ¶¶ 2, 10.  Plaintiff's assignments included Field Officer, Gang Suppression Officer, Public

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 12-14.)

Information Officer, and DWI Officer.  *Id.* at ¶ 11.  Plaintiff's employment with the City is

governed and regulated by (1) City Human Resources Rules, Regulations and Policies;

(2) Albuquerque Police Officers Association (APOA) Collective Bargaining Agreement;

(3) Standard Operating Procedures; (4) City of Albuquerque Merit System Ordinances;

(5) Labor Management Relations Ordinance; (6) Conflict of Interest Ordinance; (7) Executive

Orders; and (8) Administrative Instructions.  *Id.* at ¶ 13.

On July 30, 2019, the United States of America and the City of Albuquerque, with the

consent of Intervenor Albuquerque Police Officers' Association and the concurrence of the

Independent Monitor, filed a Second Amended and Restated Court-Approved Settlement

Agreement ("CASA") in *United States of America v. City of Albuquerque*, USDC NM Civ. No.

14-1025 JB/JFR (Doc. 465).[2]  Doc. 1-2 at ¶ 52.

On November 17, 2019, Plaintiff and two other Albuquerque Police Department

("APD") officers, including Plaintiff's immediate supervisor, were involved in a DWI

investigation and arrest.  *Id.* at ¶¶ 18-19.  On the night of the arrest, Plaintiff's sergeant

conducted an administrative investigation, agreed with the arrest decision, and concluded there

was no need to further investigate the arrest matter.  *Id.* at ¶ 20.

On November 20, 2019, the arrestee initiated a complaint to the Civilian Police

Oversight Administration ("CPOA") alleging, *inter alia*, false arrest.  *Id.* at ¶ 22; Doc. 9-1 at 4.[3]

---

[2] Plaintiff cites various definitions, conditions, and procedures contained in the Court-Approved Settlement Agreement ("CASA") that he alleges are relevant to officer misconduct investigations.  Doc. 1-2 at 8-13.  *See St. Louis Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10ᵗʰ Cir. 1979) (holding that federal courts may take notice of proceedings in other courts, both within and outside of the federal judicial system).

[3] Attached to Defendants' Motion to Dismiss is the Second Judicial District Court's Final Memorandum Opinion and Order regarding Plaintiff's appeal pursuant to 1-074 NMRA of the City Personnel Board's Findings of Fact, Conclusions of Law, and Recommendation upholding his termination for just cause.  Doc. 9-1.  *See St. Louis Temple, Inc.,* 605 F.2d at 1172; *see also Smith v. United States*, 561 F.3d 1090, 1098 (10ᵗʰ Cir. 2009) (in evaluating a 12(b)(6) motion to dismiss the court may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384

On January 13, 2020, the CPOA transferred the complaint to APD Internal Affairs ("APD IA"). Doc. 1-2 at ¶ 23.  On January 23, 2020, the City issued a target letter to Plaintiff advising him of the investigation.  *Id.* at ¶ 24.  On January 27, 2020, APD IA issued a letter advising Plaintiff of the investigation.  *Id.* at ¶ 25.

The City, through APD IA, assigned APD Detective Whitney Burton as the investigator for the investigation.  *Id.* at ¶ 26.  On February 21, 2020, Detective Burton conducted an interview with Plaintiff.  *Id.* at ¶ 28.  On April 1, 2020, Detective Burton submitted her investigation report to APD with proposed findings and recommendations.  *Id.* at ¶ 29.  On April 20, 2020, the investigation was concluded and the City, through APD, issued findings that included allegations against Plaintiff for violations of the rules of professional standards during an investigation, dishonesty, and violating rules of conduct.  *Id.* at ¶ 30.  On April 23, 2020, the Chief of Police/Bureau Head's "Proposed Findings" were submitted to the "AC, " after which Commander Zakary Cottrell recommended suspension, letter of reprimand, and termination to then-Chief Geier and Deputy Chief J. J. Griego, who both concurred with the recommendations. *Id.* at ¶¶ 31, 32.  On May 13, 2020, Detective Burton briefed then-Chief Geier and Deputy Chief Medina, and Plaintiff was placed on administrative leave and removed from his instructional role at the DWI Academy.  *Id.* at ¶ 33.

On May 21, 2020, the City submitted the first Pre-Disciplinary Hearing Notice to Plaintiff.  *Id.* at ¶ 35.  On May 26, 2020, Area Commander John Brown instructed Plaintiff to sign the Notice and a hearing was set for June 4, 2020.  *Id.* at ¶ 36.  On June 4, 2020, Plaintiff presented for the hearing with then-Chief Geier, was not permitted to present his case, was told

---

(10th  Cir. 1997) (explaining that "if a plaintiff does not incorporate by reference or attach such a document to its complaint, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss).

the "arrest decision was wrong," and that termination was "off the table." *Id.* at ¶ 37. The City provided Plaintiff with a copy of the CPOA Complaint for the first time at the hearing. *Id.*

On June 19, 2020, then-Chief Geier submitted to Plaintiff a second hearing Notice regarding the same disciplinary intent. *Id.* at ¶ 38. On July 6, 2020, the City initiated a Pre-Disciplinary Hearing of Plaintiff. *Id.* On July 8, 2020, Deputy Chief Medina conducted a second Pre-Disciplinary Hearing stating he was engaging in "further evaluation." *Id.* at ¶ 39.

On July 13, 2020, Deputy Chief Medina submitted a Memorandum to IA Commander Cottrell concurring and recommending Plaintiff's termination. *Id.* at ¶ 40. On July 15, 2020, Deputy Chief Medina submitted to Plaintiff a Final Decision to Terminate, effective July 20, 2020, and stated, in part, that he had received and considered Plaintiff's responses to the Pre-Determination Hearings and "reviewed and considered [Plaintiff's] past disciplinary record, and work history in reaching [the] decision" to terminate Plaintiff's employment. *Id.* at ¶ 41. Plaintiff's past disciplinary record included a Letter of Reprimand dated June 29, 2016, and a suspension on September 29, 2017. *Id.* at ¶ 42. No other City employees were terminated or known to be disciplined for the subject arrest.[4] *Id.* at ¶ 43. The timeline from when the

---

[4] Plaintiff alleges that "[n]o other employees were terminated or known to be disciplined for the subject arrest," Doc. 1-2 at ¶ 43, and elsewhere alleges that the "City did not investigate or terminate the other officers for the same and similar conduct," *id.* at ¶ 144. Plaintiff's allegations are contradicted by properly considered document evidence. Attached to Defendants' Motion to Dismiss is Plaintiff's "Statement of Appellate Issues" filed in the Second Judicial District Court when Plaintiff appealed the City Personnel Board's findings, conclusions, and recommendation. Doc. 9-3. *See St. Louis Temple, Inc.,* 605 F.2d at 1172; *see also Smith,* 561 F.3d at 1098; *GFF Corp,* 130 F.3d at 1384. Plaintiff explicitly states in that document, under the heading "Albuquerque Police Administrative Summary," that

> Officer Hans was investigated as well and received a sixty (60) hour suspension. . . . Duran's supervisor was also investigated and received a sixty (60) hour suspension. . . . But for the allegation of untruthfulness, Duran would have received an eighty (80) hour suspension and a Written Reprimand.

Doc. 9-3 at 3. *See Peterson v. Martinez,* 707 F.3d 1197, 1206 (10th Cir. 2013) ("factual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true") (quoting *GFF Corp.,* 130 F.3d at 1385 (omission in original)).

administration investigative process was initiated by Plaintiff's supervisor on November 17, 2019, to the day Plaintiff was terminated was a total of 221 days.[5]  *Id.* at ¶ 45.

On November 2, 2020, Independent Monitor James D. Ginger filed his Monitor's Twelfth Report as part of the Compliance Levels of the Albuquerque Police Department and the City of Albuquerque with Requirements of the Court-Approved Settlement Agreement in

---

[5]  Plaintiff alleges that the "90-day administrative clock" for an IA investigation began on the date of the arrest incident and ended on the date of his termination (246 days).  Doc. 1-2 at ¶ 21.  Plaintiff further alleges that the "90-day administrative clock" *includes* the time for review and discipline to be issued.  *Id.*  Elsewhere, Plaintiff points to the date of the CPOA Complaint, November 20, 2019, as starting the administrative investigative clock and still ending on the date of his termination (243 days).  *Id.* at ¶ 72.  In support of his allegation, Plaintiff cites from the CASA entered in USDC NM Civ. No. 14-1025 JB/JFR (Doc. 465).  Doc. 1-2 at ¶ 52.l; *see* fn. 2, *supra*.  That agreement states at paragraph 191 that:

> *All administrative investigations conducted by the Internal Affairs Division or the Civilian Police Oversight Agency shall be completed within 90 days of the initiation of the complaint investigation*. The 90-day period *shall not* include time for review. An extension of the investigation of up to 30 days may be granted but only if the request for an extension is in writing and is approved by the Chief. Review and final approval of the investigation, and the determination and imposition of the appropriate discipline, shall be completed within 30 days of the completion of the investigation. To the extent permitted by state and city law, extensions may also be granted in extenuating circumstances, such as military deployments, hospitalizations of the officer, and extended absences.

*Id.* (citing USDC NM Civ. No. 14-1025 JB/JFR( Doc. 465-1 at 64-65) (emphasis added).  Elsewhere in his Complaint, Plaintiff cites similar investigative timing language from the Collective Bargaining Agreement.  Doc. 1-2 at ¶ 58.

On its face this provision addresses timing limitations related to the investigatory period once a formal agency investigation is initiated and conducted by either IA or the CPOA and contains separate timing limitations for review and approval of the investigation and determination of appropriate discipline.  As such, this provision does not support Plaintiff's timeline theory, *i.e.,* that the "90-day administrative [investigatory] clock" began ticking on the date of the incident arrest, includes the time for review and discipline, and stopped on the date of his termination. *See Peterson,* 707 F.3d at 1206.

Additionally, the November 20, 2020, DOJ IMR Plaintiff cites in support of certain of his allegations, *see* fn. 6, *infra*, specifically addressed the timeliness of reviewed misconduct investigations undertaken during the relevant reporting period, which included the investigation of the arrest incident involving Plaintiff.  *See United States of America v. City of Albuquerque*, USDC NM Civ. No. 14—1025 JB/JFR (Doc. 652 at 256).  In that report, the monitor identified five investigations "that did not proceed as expeditiously as possible or are otherwise out of compliance with time requirements[.]"  *Id.* at 256.  They included IMR-12-45, IMR-12-48, IMR-12-50, IMR-12-51 and IMR-12-52.  *Id.* Notably, the investigation of the arrest incident involving Plaintiff, IMR-12-39, was *not* listed among those as being out of compliance with investigatory time requirements.  *Id.*; *see also Peterson,* 707 F.3d at 1206.

*United States of America v. City of Albuquerque*, USDC Civ. No. 14-1025 JB/JFR (Doc. 652).[6]

*Id.* at ¶ 53.

_____

[6] Plaintiff cites selective portions of the Monitor's Twelfth Report ("DOJ IMR"), dated November 2, 2020, prepared as part of the Compliance Levels of the Albuquerque Police Department and the City of Albuquerque with Requirements of the Court-Approved Settlement Agreement, in *United States of America v. City of Albuquerque*, USDC Civ. No. 14-1025 JB/JFR (Doc. 652), to support certain of his allegations. Doc. 1-2 at ¶¶ 53-55. *See St. Louis Temple, Inc.,* 605 F.2d at 1172. Plaintiff alleges that the DOJ IMR supports (1) that the "City's decision related to that arrest [was] an example of failures and incompetence of the APD IA," Doc. 1-2 at ¶ 53; (2) that the City "erred in its investigation" and "Duran had probable cause to make the arrest which the department failed to observe," Doc. 1-2 at ¶ 55; (3) that the City breached his rights as an employee as demonstrated by*, inter alia,* an "improper and biased investigation," Doc.1-2 at ¶ 75; and (4) that the DOJ "made clear that the termination of Duran was unnecessary and the decision of misconduct was misplaced and incorrect," Doc. 1-2 at ¶ 105. Plaintiff's allegations, however, are contradicted by properly considered document evidence. *See Peterson,* 707 F.3d at 1206.

The DOJ IMR covers the compliance efforts made by APD during the 12th monitoring period, which covers February 2020 through July 2020. Under "**Assessing Compliance with Paragraphs 183-194: Investigation of Complaints**," the report states in pertinent part:

> Paragraphs 183 through 194 of the CASA pertain to requirements for thoroughness, timeliness, reliability of findings, and overall quality in regard to the investigation of misconduct complaints. For example, they require that all relevant evidence be considered and that investigations be fair and impartial and reach reliable findings. They also require time limits for completion of investigations, designated permissible findings with the corresponding standard of proof, and an assessment regarding whether the facts of an investigation indicate a need for change in policy, procedure, or training.

USDC Civ. No. 14-1025 JB/JFR, Doc. 652 at 247. In this section, the report first discusses the monitor's review of five administratively closed investigations during the reporting period. *Id.* at 249-252. The report then discusses "four other matters where investigative processes or findings shortcomings must be pointed out, *but since we do not feel they adversely affected the overall reliability or disposition of the investigation, we do not calculate the[m] as deficient for compliance (reliability of investigation) purposes.*" *Id.* at 252 (citing IMR-12-44, *IMR-12-39*, IMR-12-36, and IMR-12-34) (emphasis added). The report separately discussed each of the four investigative processes the monitor reviewed. The monitor's discussion of the arrest incident involving Plaintiff, IMR-12-39, states in full as follows:

> [IMR-12-39] involved a second matter in which the reported actions of the District Attorney contradicted sustained findings of the IA investigation, and the prosecutorial analysis was not considered. Allegations were sustained against three officers regarding a warrantless entry into a residence and warrantless arrest for DWI not based on probable cause. There was information possessed by the officers that a female driver was operating a vehicle while under the influence approximately a quarter of an hour before the officers arrived and that she was now in a specific apartment made known to the officers. The constitutional analysis should have been fairly straightforward: was there probable cause to believe that an occupant of the apartment meeting the given description had committed the offense of DWI. Further, [were] there sufficient exigent circumstances (dissipation of evidence -- blood alcohol content -- and ability to leave the apartment and drive while under the influence) to justify a warrantless opening of the front door that led to observations consistent with being under the influence.

> The investigation found that there was no probable cause. We do not believe it was as clear cut as the investigative report indicates. Based on information received by the officers, the issue of probable cause before the apartment entry was made was a close call and based on observations made after the door to the apartment was opened, there was confirmation of probable cause. The

Plaintiff appealed his termination to the City Personnel Board. *Id.* at ¶ 46. On May 25, 2021, the City Personnel Board issued Findings of Fact and Conclusions of Law.[7] *Id.* at ¶ 47.

On July 22, 2021, Plaintiff appealed the City Personnel Board's Findings of Fact and Conclusions of Law to state district court. *Id.* at ¶ 48. On August 12, 2022, the state district court issued a Final Memorandum and Order affirming the City Personnel Board's determination. *Id.*

---

issue was more related to whether there were sufficient exigent circumstances to justify the police actions. There is no indication that the District Attorney's Office was contacted to determine the status of the DWI charge and whether there had been a determination of probable cause and sufficient exigent circumstances to justify moving forward with the DWI prosecution. In the PDH, it was asserted that the DWI charge had been dismissed due to a discovery violation; however, it appears from other documentation, that the DA's office had been willing to proceed with the charge based on its determination that there was a constitutional basis for the arrest.

***We cannot say that the administrative finding of an improper arrest in this case was inappropriate, and we find that the other findings relating to the collateral issues were supported by the record***. We do not mean to suggest that IAPS and the disciplinary process are bound by determinations of constitutionality made by the DA's office. However, when investigating and then adjudicating an administrative allegation based on the constitutionality of a police action, it would behoove APD to reach out and attempt to obtain the DA's view of the constitutionality of the action. Once that step had been taken, APD could then consider taking a case decision. Alternatively, advice from an attorney designated as an IAPS legal advisor would also help in areas of challenging constitutional determinations. APD should be cognizant that issues of such officer determinations, made on-the-scene in fluid situations, that do not involve areas of well-established law, can benefit from attorney input before deciding they are administratively actionable.

*Id.* at 253 (emphasis added).

Then, in considering *all four* of the reviewed investigative processes, the report states:

Given these four questionable results from APD's IA processes this reporting period, we find that IAPS is non-compliant for this paragraph. Again, we suggest the new commander of IAPS be offered task-specific training for his new responsibilities. It has been a common mistake at APD to assign individuals to task-specific assignments without prior training to build the requisite knowledge, skills, and abilities [] required in that assignment. . . . Until APD can mount a competent, well-trained, and well-staffed IA unit, led by well-trained command, and supervised by competent personnel, compliance in this area will remain elusive. Suggesting competent training for APD personnel assigned to technical areas is merely suggesting that APD do what hundreds of other agencies do: train their personnel to perform specific critical tasks.

*Id.* at 254-55.

[7] Attached to Defendants' Motion to Dismiss is the Hearing Officer's Findings of Fact and Conclusions of Law. Doc. 9-2. *See Smith,* 561 F.3d at 1098; *GFF Corp.,* 130 F.3d at 1384.

On July 20, 2023, Plaintiff filed his Complaint for Damages Arising From Wrongful Discharge, Improper Employment Practice, Constitutional Violations, and Breach of Contract ("Complaint") in the State of New Mexico, County of Bernalillo, Second Judicial District Court, Case No. D-202-CV-2023-05705.  Doc. 1-2.  Plaintiff's Complaint brings five counts against the Defendants as follows: Count I - Breach of Contract; Count II - Common Law Wrongful Employment Practices In Violation of Public Policy; Count III - 42 U.S.C. § 1983 (2013) Violations Adverse to Defendant Harold Medina; Count IV – 42 U.S.C. § 1983 (2013) Violations Adverse to Defendant Whitney Burton; and Count V – Violation of Equal Protection Clause of the Fourteenth Amendment to the Constitution – Due Process. *Id.*  Plaintiff served Defendants on November 17, 2023.  Docs. 1 at 1.  On December 18, 2023, Defendants removed this matter to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), 1443 and 1446(a).  Doc. 1.

Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants argue that Plaintiff's breach of contract claim concerns a collective bargaining agreement between the City and a labor organization and relies on issues previously litigated such that it is precluded by collateral estoppel. Doc. 9 at 2.  Defendants argue that Plaintiff's due process violations raised here under the Fourteenth Amendment and 42 U.S.C. § 1983 rely on issues and claims previously determined in litigation and are similarly precluded by collateral estoppel and res judicata. *Id.*  Defendants argue that Plaintiff's common law wrongful employment practices in violation of public policy claim fails because the City Defendants' immunity to intentional torts is not waived by the New Mexico Tort Claims Act. *Id.* at 3. Defendants argue that Plaintiff's claims of substantive due process and equal protection fail because Plaintiff has not alleged the requisite elements to sustain them. *Id.* at 3.  Defendants argue that Plaintiff's claims for punitive damages and prejudgment interest are not permitted

under the Tort Claims Act. *Id.* And last, Defendants argue that Plaintiff's claims against the APD fail because APD is a non-suable entity. *Id.*

## II. <u>LEGAL STANDARD</u>

Fed. R. Civ. P. 12(b)(6) provides that a party may assert by motion the defense of failure to state a claim upon which relief can be granted. In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). While the facts in the complaint need not be detailed, they must be sufficient to allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, internal quotation marks, and citation omitted). Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks and citation omitted). Moreover, the Court may take judicial notice of its own files and records in deciding this type of motion.

*Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *see Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006). Judicial notice of court filings is particularly helpful in situations where a motion to dismiss invokes preclusion doctrines. *See, e.g.*, *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003).

### III.    <u>ANALYSIS</u>

### A.    <u>Supplemental Jurisdiction</u>

Some of the claims asserted in Plaintiff's Complaint arise under federal law, while others arise under state law. As diversity of citizenship is not alleged in this case, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Before doing so, however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims. *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995). In this case the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are closely intertwined with his federal claims, rely on the same set of facts, and are subject to disposition based on clearly established law. Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' Motion.

**B.**      <u>**Motion to Dismiss**</u>

Defendants' Motion seeks to dismiss the entirety of Plaintiff's Complaint.  The Court

begins by addressing Defendants' arguments that Counts I, III, IV and V are precluded by

res judicata and/or collateral estoppel and should be dismissed.

**1.**      <u>**Res Judicata/Collateral Estoppel**</u>

"The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue

preclusion, are closely related."  *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir.

1995) (internal quotation marks and citation omitted).  "Res judicata generally applies where

there is a final judgment on the merits which precludes the parties or their privies from

relitigating issues that were decided or issues that could have been raised in the earlier action."

*Id.*  "A claim is barred by res judicata when the prior action involved identical claims and the

same parties or their privies."  *Id.*  "Collateral estoppel, however, does not always require that

the parties be the same.  Instead, collateral estoppel requires an identity of issues raised in the

successive pleadings and the determination of these issues by a valid final judgment to which

such determination was essential."  *Id.* (internal quotation marks and citation omitted).

"The United States Supreme Court has 'long favored application of the common-law

doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those

determinations of administrative bodies that have attained finality."  *Brockman v. Wyoming

Dept. of Family Services*, 342 F.3d 1159, 1166 (10th Cir. 2003) (quoting *Astoria Fed. Sav. &

Loan Assoc. v. Solimino,* 501 U.S. 104, 107 (1991)).  "Applying the principles of collateral

estoppel, or issue preclusion, to decisions of state administrative bodies serves to promote

federalism, conserve judicial resources, and encourage parties to minimize the expense and

burden of repetitive litigation."  *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004)

(citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986)); *Zamora v. Village of Ruidoso Downs*, 907 P.2d 182, 185 (N.M. App. 1995) (finding that personnel board was acting in quasi-judicial capacity when it convened to investigate facts surrounding employee's discharge and to determine whether termination violated ordinance); *see also Reed v. McKune*, 298 F.3d 946, 949-50 (10th Cir. 2002) (a decision from a state court has the same preclusive effect in federal court as the decision would have in a subsequent state court action).

The Supreme Court in *Elliott* established that a state agency's decision will have the same preclusive effect that it would receive from the state court if the state agency: (i) acts in a "judicial capacity"; (ii) resolves "disputed issues of fact properly before it"; and (iii) the parties have had "an adequate opportunity to litigate" the issue. *Elliott,* 478 U.S. at 799; *accord Salguero*, 366 F.3d at 1173. If the *Elliott* factors are met, then the court looks to New Mexico law to determine whether preclusion is proper. *Id.* The factors to be weighed in determining whether the administrative proceeding "provided Plaintiff with a full and fair opportunity to litigate include Plaintiff's incentive to litigate in the administrative forum, procedural differences between the two forums, and policy considerations." *Padilla v. Intel Corp.,* 964 P.2d 862, 865 (N.M. App. 1998) (citing *Rex, Inc. v. Manufactured Hous. Comm.,* 892 P.2d 947, 952 (N.M. 1995)).

According to New Mexico law, "[r]es judicata is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter v. Pierce*, 342 P.3d 54, 55 (N.M. 2015). The party asserting res judicata must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same,

and (4) the cause of action is the same in both suits.  *Kirby v. Guardian Life Ins. Co. of Am.*, 231

P.3d 87, 105 (N.M. 2010) (citing *City of Sunland Park v. Macias*, 75 P.3d 816, 822 (N.M. App.

2003)).

New Mexico courts apply collateral estoppel to administrative hearings provided:

"(1) the party against whom collateral estoppel is asserted [was] a party or in privity with a

party to the original action; and (2) the two cases concerned the same ultimate issue of fact

which was (a) actually litigated, and (b) necessarily determined in the first suit.  *Salguero*, 366

F.3d at 1173 (quoting *DeLisle v. Avallone*, 874 P.2d 1266, 1269 (N.M. App. 1994)).  If the party

invoking the doctrine establishes a prima-facie case, then the burden shifts to the party opposing

collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue

in the prior proceeding.  *Padilla,* 964 P.2d at 865.

Whether the doctrine of collateral estoppel should be applied is within the trial court's

discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal.

*Shovelin v. Central New Mexico Elec. Co-op., Inc.*, 850 P.2d 996, 1002 (N.M. 1992).  Even

when all the elements of collateral estoppel are present, the trial court must consider whether

countervailing equities militate against application of the doctrine.  *Hyden v. Law Firm of

McCormick, Forbes, Caraway & Tabor*, 848 P.2d 1086, 1091 (N.M. App. 1993).  Collateral

estoppel should be applied only where the judge determines that its application would not be

fundamentally unfair.  *Reeves v. Wimberly*, 755 P.2d 75, 78 (N.M. App. 1998).

### a.   Administrative and Judicial Proceedings

Application of the preclusion doctrines in this case turns on information contained in the

complaint and documents appropriately subject to judicial notice.  *See St. Louis Temple, Inc. v.*

*F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that federal courts may take notice of proceedings in other courts, both within and outside of the federal judicial system).

The City disciplined Plaintiff with termination, effective July 20, 2020, based on Plaintiff's violating rules of professional standards during an investigation, dishonesty, violating rules of conduct, and consideration of his past disciplinary record. Following his termination, Plaintiff "engaged in the required administrative processes to grieve and object to his termination by filing an appeal" to the City Personnel Board. Doc. 1-2 at ¶ 46. His appeal was heard on March 4 and 5, 2021, before Hearing Officer William R. Babington, Jr. Doc. 9-2. Hearing Officer Babington prepared "HEARING OFFICER'S FINDINGS OF FACT AND CONCLUSIONS OF LAW." *Id.* This document is date stamped "Received" on May 25, 2021. *Id.* Hearing Officer Babington preliminarily states as follows:

> Per the City of Albuquerque Personnel Board Rules of Procedure for Appeals of Disciplinary Action, a hearing was conducted on March 4th and 5th 2021 involving the termination of former officer Fred Duran.

> The hearing involved the testimony of Mr. Fred Duran (hereinafter Duran or Grievant), Officer Anthony Hans (hereinafter Hans), Detective Whitney Burton (hereinafter Burton), Deputy Chief Jon Griego (hereinafter Griego) and Interim Chief Harold Medina (hereinafter Medina). Additionally, City Exhibits 1-28 were stipulated to and admitted as evidence. Exhibits 2a, 2b, and 2c are the body camera videos (referred to as "OBRD") of the three officers that were at this incident. Each of these videos contain a date and time code related to "Z" or "Zulu time / Greenwich Mean Time.["] Officer Endres' video (Ex 2c) is defective but was not considered to be material to the findings or conclusions. Both the City and Grievant agreed to a transcript of the hearing to be produced. Both City and Grievant submitted proposed findings of fact and conclusions of law and were considered by the Hearing Officer.

Doc. 9-2 at 2. Hearing Officer Babington's Findings of Fact in pertinent part are as follows:

1. In the early morning hours of November 17, 2019, a 911 call was received indicating that a woman was intoxicated and driving through the parking lot at the Sun Village Apartments off Indian School Road. (Ex 1 at 4).

2. Officer Hans was dispatched as primary officer to the scene. (Ex 4, testimony of Hans).

3.      Officer Duran assigned himself to the incident shortly thereafter.  (Ex 4).

4.      Officer Hans arrived on scene and began to talk with witnesses who identify the woman was driving in the parking lot as Ms. Laura Rios. (Ex 4, Testimony of Hans).

. . .

7.      Shortly thereafter, Duran arrived on scene.  (Ex 4, Testimony of Hans and Duran).

. . .

9.      Hans gives Duran a brief breakdown of what he has learned about the incident and Ms. Rios as they walk to what they believe to be Ms. Rios' apartment.  (Testimony of Hans and Duran).

. . .

13.     The initial basis of the investigation was based on an allegation of leaving the scene of an accident.

. . .

15.     Duran knocked on the door of Ms. Rios' apartment several times but received no response (Testimony of Duran, Ex 2a, Testimony of Hans, Ex 2b).

. . .

17.     Duran pushes the door open with his foot.  (Ex 2b Hans T08:30:25).

18.     Duran beginning to talk with Ms. Rios in an effort to coax her outside her residence.  (Ex 2a Duran OBDR).

. . .

22.     Duran's foot remains across the door's threshold and into Ms. Rios' apartment.  (Ex 2b, Hans OBDR T08:32:50).

23.     Duran continues to attempt to have Mr. Rios leave the apartment and talk with him.  (Ex 2a, Duran OBDR).

24.     Duran enters the apartment to take Ms. Rios into custody.  (Ex. 2b, Hans OBDR, T08:34:13).

. . .

28.   Duran then inspects Ms. Rios' vehicle and the vehicle parked in front of Ms. Rios' vehicle.  (Ex 2b Hans OBDR no sound T08:53:19Z).

29.   Duran then interviews two witnesses: security officer and Mr. Owens. Mr. Owens states he did not see any damage.  (Ex 2a, Duran OBDR T08:55:46).

. . .

35.   Duran completed his Albuquerque police report and the criminal complaint against Ms. Rios by 4:55 am 17 Nov 2019.  (Ex 3 and Ex 5).

36.   The criminal complaint listed aggravated DWI, Careless Driving, Driving on a revoked driver's license, and Open Container.  (Ex 3).

37.   Careless Driving and Driving on a revoked driver's license only apply to driving on a highway, not a private parking lot.  (Testimony of Duran; Ex 10, Interview Sgt. Chavez, Bates Stamp 0363-0364).

. . .

42.   Exhibit 10 is Detective Burton's Investigation.

. . .

44.   Detective Burton found that Duran violated APD Standard Operating Procedures (SOP) 3-13-382 and 3-13-383b when he conducted a search of Ms. Rios apartment by opening her front door, entering her apartment, and arresting her without having established probable cause.  (Ex. 10, Bates stamp 58 and 59).

45.   Detective Burton additionally found violation of SOP 1-1-4D19 and 2-60-4A5(a)(b)(f) when Duran wrote an inaccurate report and criminal complaint involving Ms. Rios.  (Ex. 10, Bates stamp 62 and 63).

46.   Detective Burton concluded that Duran was untruthful[] during his Internal Affairs Investigation in violation of SOP 1-1-4D20 when he stated that Ms. Rios' door opened when he knocked, and that Ms. Rios' hand extended outside the door threshold.  (Ex. 10, Bates stamp 61, Ex2a Duran OBDR).

. . . .

49.   A review of the Taser Lapel videos as compared to Duran's investigative report and criminal complaint show major discrepancies.

50.   Deputy Chief Medina reviewed Detective Burton's investigation. (Testimony of Medina).

51.     Deputy Chief Medina held a pre-determination hearing with Duran.  (Ex 16).

52.     Deputy Chief Medina was concerned with the search and seizure of Ms. Rios as well as the lack of consistency in Duran's report and the video. (Testimony of Medina).

53.     After conducting the pre-determination hearing, Deputy Chief Medina concurred in the recommendation of termination.  (Ex 16 and 17).

54.     Deputy Chief Medina considered Duran's prior disciplinary history.  (Ex 18, 19, and 20).

Doc. 9-2 at 5-6.

Hearing Officer Babington's Conclusions of Law state in pertinent part:

. . .

E.      That Officer Duran and Hans' taser lapel videos offer the best evidence of what transpired at Ms. Rios' apartment.

F.      That Officer Duran's report and criminal complaint do not accurately represent the actions taken by Officer Duran as shown by his taser lapel video.

G.      That Officer Duran violated SOP 1-1-4(D)(19) and (20) when Officer Duran failed to accurately describe the incident occurring at Ms. Rios' apartment in his report and the criminal complaint be prepared.

H.      That a violation of SOP 1-1-4(D)(19) or (20) may be punished with termination.

I.      That the issue of whether Officer Duran's search and seizure of Ms. Rios without a warrant was authorized under state law is not relevant to Officer Duran's obligation to report honestly what occurred during the incident of Ms. Rios' arrest.

. . .

M.      That officials at APD had justifiable cause to bring disciplinary action against Officer Duran.

N.      That termination of Officer Duran was reasonable considering the offenses and prior disciplinary history.

Doc. 9-2 at 7-8.

Based on his findings and conclusions, Hearing Officer Babington recommended that the termination action taken against Plaintiff be upheld as based on justifiable cause and that it was appropriate given the offenses. *Id.* at 8. On June 23, 2021, members of the City Personnel Board approved Hearing Officer Babington's findings, conclusions, and recommendation. *Id.* at 9.

On July 22, 2021, Plaintiff appealed the City Personnel Board's Findings of Fact, Conclusions of Law, and Recommendation to the Second Judicial District Court. Doc. 1-2 at ¶ 48. On June 20, 2021, Plaintiff submitted a Statement of Appellate Issues and listed his appellate issues as follows:

> (1) Whether the Personnel Board and Hearing Officer acted contrary to law with respect to the crime of driving while intoxicated?
>
> (2) Whether substantial evidence exists to support a finding of Duran's untruthfulness?
>
> (3) Whether the Personnel Board acted contrary to State law and principles of due process?
>
> (4) Whether just cause existed for termination, rather than a lesser discipline?

Doc. 9-3 at 1-2. In the body of his statement, Plaintiff argued, *inter alia,* that the City Personnel Board mistakenly adopted the hearing officer's report regarding the timing of Plaintiff's interview with the security officer when it concluded that Plaintiff was untruthful; that the City Personnel Board's conclusion was contrary to law because it disregarded that Plaintiff was not afforded "notice and an opportunity to be heard" on the untruthfulness allegations; that there was insufficient evidence to support a finding that Plaintiff was untruthful; and that just cause existed to impose a lesser discipline, rather than termination. Doc. 9-3 at 6-13.

On August 12, 2022, Second Judicial District Court Judge Benjamin Chavez entered a Final Memorandum Opinion and Order affirming the City Personnel Board's determination. Doc. 9-1. Judge Chavez preliminarily states that the court reviewed the entire record, Appellant's Statement of Appellate Issues, and the City of Albuquerque's Response to Statement of Appellate Issues. *Id.* at 1. Judge Chavez first determined that the court need not determine whether Plaintiff had probable cause to arrest Ms. Rios because Hearing Officer Babington's conclusions were not based on the DWI or the search and seizure aspects of the case. *Id.* at 5. "Rather, the Hearing Officer concluded termination was justified based on findings of untruthfulness." *Id.*

Next, in addressing whether substantial evidence supported the City Personnel Board's finding of untruthfulness, Judge Chavez explained:

> . . . The Court concludes substantial evidence supports the finding. The evidence consists of discrepancies between what the videos show and what Appellant stated in the police report and the Criminal Complaint.
>
> Appellant's police report states: "I arrived and located a security guard who advised me the female was observed in her vehicle described as a [blue Mazda]. The security guard said she had damage to her vehicle but was not sure what she struck." [RP 00146.] The police report goes on to describe additional information provided by the security guard, then states Appellant made contact with Ms. Rios at her apartment. [RP 00147.] These statements are repeated in the Criminal Complaint Appellant prepared charging Ms. Rios with aggravated DWI. [RP 00154.]
>
> These statements taken together and in sequence reasonably could be considered untruthful for several reasons. First, the report suggests, and even explicitly states that Appellant interviewed the security guard himself. It is undisputed that Appellant did not interview the security guard himself before arresting Ms. Rios. Rather, the officer who arrived on the scene before Appellant collected statements from the person identified as a security guard spoke to him. Second, to the extent Appellant spoke to the security guard, it was not until after he made the arrest. [City's Ex. 2A, 2B.]
>
> The Hearing Officer reasonably could have concluded based on the video evidence and the testimony that the narrative sequence in the report, while

containing some accurate information, was designed to mislead.  Chronology matters for an assessment of probable cause.  The Hearing Officer therefore reasonably could have credited testimony that the order of events as listed in the report was deliberately formulated for the purpose of supplying probable cause for an arrest that otherwise may have been missing.  [RP 01089 (Griego testimony).]

In addition to an affirmatively misleading narrative sequence, there is a significant omission.  The report omits the fact that Appellant entered the apartment.  According to testimony at the hearing, the omission is telling and significant.  Appellant spent a substantial amount of time standing outside the threshold of the apartment, while simultaneously attempting to coax Ms. Rios to step out of the apartment.  Appellant's conduct, words, and omissions taken together indicated to the reviewing officers that he was aware he did not have lawful authority to enter.  [RP 01087-88, 01091-92 (Griego testimony); RP 01171, 01174-76 (Medina testimony).]  They therefore concluded the omission was intentional and reflected dishonesty, not merely a mistake.  Based on this evidence, the Hearing Officer reasonably could have concluded the omission constituted untruthfulness.

The Court has conducted a review of the whole record and notes the Internal Affairs investigation revealed other significant inaccuracies and discrepancies between the video evidence on the one hand, and statements Appellant made about the arrest on the other.  However, further review and discussion is unnecessary.  The evidence described above constitutes substantial evidence to support a finding of untruthfulness under an appellate standard of review.

Doc. 9-1 at 6-7.  Next, as to Appellant's due process issue, Judge Chavez determined:

Appellant claims he was not given notice of the untruthfulness charge and therefore was deprived of due process during the administrative proceedings.  The argument is based on correspondence to Appellant dated January 23, 2020, the so-called "target letter" issued by Detective Burton.  [RP 00161.]

. . .

The Court discerns no due process violation.  The target letter did not advise Appellant he would be investigated for untruthfulness.  However, evidence of untruthfulness was uncovered during the investigation.  Detective Burton's report extensively details the untruthfulness claims and the evidence supporting the claims.  [RP 00193, 00195, 00197-98, 00206-10, 00221-22.]  Appellant received this report and therefore had notice that he was charged with untruthfulness.

After receiving the report, Appellant was afforded a pre-determination hearing which was his first opportunity to dispute the claims listed in the report,

including the claim of untruthfulness.  A second opportunity to meet the charges occurred at the evidentiary hearing in May 2021.  At that hearing, Appellant was represented by counsel, testified on his own behalf, and cross-examined the witnesses who claim he had been untruthful.

Doc. 9-1 at 7-8.  Finally, as to his lesser discipline issue, Judge Chavez determined in pertinent

part that

On appeal, the Court does not determine whether some other discipline could have been imposed.  The question for purposes of appeal is whether the agency abused its authority or acted unreasonably by terminating Appellant.  . . . The Court concludes termination was not unreasonable in this case.

The reviewing officers testified that Appellant's failure to recognize or acknowledge the wrongfulness of a warrantless entry into a private dwelling was gravely concerning and unreasonable.  []  Chief Medina also testified that he did not consider a lesser sanction because of the apparent untruthfulness aspect.  []

The record indicates that untruthfulness is not tolerated and is grounds for automatic termination because of the consequences it entails for an officer's credibility.  []  According to testimony at the hearing, the concern is that an officer who has been found to be untruthful will be unable to fulfill the important duty of testifying in court.

. . .

. . .  [T]he finding that Appellant's ability to testify is compromised because of a prosecutor's obligations under *Giglio*[8] is supported by the record and the case law.  The Personnel Board determined that this concern was sufficient cause to terminate.  . . .  The Court declines to reverse the finding of just cause.

Appellant has not demonstrated grounds to reverse.  Accordingly, the decision of the Personnel Board is **AFFIRMED**.

Doc. 9-1 at 8-10.

---

[8] *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972) (prosecutor's nondisclosure of evidence affecting credibility of a government witness may be grounds for a new trial).

       **b.**       **This Court Must Give the Underlying Administrative and Judicial Proceedings the Same Preclusive Effect To Which They Would Be Entitled in a New Mexico State Court**

The Court finds that the initial three-step test to determine whether a state agency's findings can be given preclusive effect as established in *Elliott* are satisfied.  *See Elliot*, 478 U.S. at 799.

First, the City Personnel Board acted in a judicial capacity by investigating facts, holding a hearing, and making findings and drawing conclusions regarding the grounds for and justification of the City's disciplinary action taken against Plaintiff.  *See Shovelin*, 850 P.2d at 1001 (explaining that for purposes of claim preclusion the grievance board's decision is considered a final judgment); *Zamora*, 907 P.2d at 184-85 (explaining that state administrative body acts in quasi-judicial capacity when it is "required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action; *see also Salguero*, 366 F.3d at 1173 (finding that grievance board acted in judicial capacity where it held a hearing and made findings pursuant to state statutory authority).

Second, the City Personnel Board resolved disputed issues of fact that properly were before it and made findings and conclusions necessary to address whether the termination of Plaintiff's employment should be upheld.  The factual issues necessarily decided to support the City Personnel Board's ultimate determination of just cause were whether Plaintiff had probable cause to make the arrest and its relevance to his termination, whether Plaintiff had accurately represented in the police report and criminal complaint the actions he took and the sequence of events during the arrest incident, and whether he provided a truthful account of his actions and the events in the subsequent IA investigation.  Doc. 9-2.  The hearing officer considered witness testimony, stipulated exhibit evidence, lapel video evidence, and proposed findings of fact and

conclusions of law submitted by both the City and Plaintiff. *Id.* The hearing officer concluded that the lapel videos offered the best evidence of what transpired during the arrest incident and made findings of fact and conclusions of law that the lapel videos when compared to Plaintiff's police report, criminal complaint, and subsequent interview showed major discrepancies. *Id.* The hearing officer concluded that Plaintiff's failure to accurately report and represent his actions during the arrest incident violated certain standard operating procedures which were punishable with termination. *Id.* The hearing officer also concluded that the issue of whether Plaintiff's search and seizure of the arrestee without a warrant was authorized under state law was not relevant to Plaintiff's obligation to report honestly what occurred during the incident. *Id.*

Third, the parties had an adequate opportunity to litigate the factual issues relevant to and the ultimate issue of whether the City had just cause for the disciplinary action taken against Plaintiff. Here, Plaintiff was notified of the arrest incident investigation, was interviewed as part of the investigation, received a copy of the investigation report, was afforded multiple pre-determination hearings, participated in a two-day evidentiary hearing before the City Personnel Board at which he was represented by counsel, testified on his own behalf, cross-examined witnesses, and submitted proposed findings of fact and conclusions of law. Docs. 9-1, 9-2, s*ee Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (explaining that when a public employee has a constitutionally protected property interest in his employment, deprivation of this property interest must be "preceded by notice and opportunity for hearing appropriate to the nature of the case"); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1990) (indicating that "[a] fundamental principle of procedural due process is a hearing before an impartial tribunal"); *Salguero*, 366 F.3d at 1174

(finding full and fair opportunity to litigate where plaintiff was represented by counsel, had a strong incentive to litigate, called witnesses, cross-examined witnesses, and presented other evidence); *Mascarenas v. City of Albuquerque*, 274 P.3d 781, 790 (N.M. App. 2012) (explaining it could not say that plaintiff did not have the incentive to vigorously litigate where issue addressed by the personnel board was whether city had just cause to terminate plaintiff).

Plaintiff also appealed the City Personnel Board's determination to the Second Judicial District Court pursuant to Rule 1-074,[9] where he presented a statement of his appellate issues. Doc. 9-3.  *See Paule v. Santa Fe Cty. Bd. of Cty. Comm'rs*, 117 P.2d 240, 248 (N.M. 2005) (stating that in reviewing administrative decisions, reviewing courts must determine "whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law").  The Second Judicial District Court affirmed that whether Plaintiff had probable cause to make an arrest was not the basis of his termination, that substantial evidence supported a finding of Plaintiff's untruthfulness about his actions and the sequence of events during the arrest incident, that the administrative proceedings complied with due process requirements, and that the City Personnel Board had not abused its authority or acted unreasonably in terminating

---

[9] Two New Mexico rules of civil procedure apply to administrative review procedures: NMRA 1-074 and NMRA 1-075. Rule 1-074 applies when there is a statutory right to review, while Rule 1-075 applies when there is not.  NMRA, Rule 1-074 is titled "Administrative Appeals; Statutory Review by District Court of Administrative Decisions or Order."  As to its scope, Rule 1-074 states

> [t]his rule governs appeals from administrative agencies to the district courts when there is a statutory right of review to the district court, whether by appeal, right to petition for writ of certiorari, or other statutory right of review.  This rule does not create a right to appeal.  For purposes of this rule, an "agency" means any state or local government administrative or quasi-judicial entity.

NMRA, Rule 1-074(A) (emphasis added).

Plaintiff and that Plaintiff's termination was justified and appropriate based on his offenses, namely his untruthfulness, and his prior disciplinary history.  Doc. 9-1.

Because the administrative and judicial proceedings satisfy the *Elliott* factors, this Court must give the same preclusive effect to these findings as they would be entitled to in a state court in New Mexico.  *Salguero*, 366 F.3d at 1173.

### (1)      <u>Breach of Contract</u>

In Count I of his Complaint, Plaintiff alleges breach of contract.  Plaintiff alleges that he had and has a legitimate and meaningful interest in maintaining his employment reputation, employment status, and position, and that his termination was inexplicable in light of the circumstances, investigation conduct, and treatment of other officers.  Doc. 1-2 at ¶¶ 68-69. Plaintiff alleges that the City by and through its employees failed to take prompt and adequate steps to investigate the allegations against him, and that he was wrongfully investigated and disciplined in violation of the policies, procedures, standards, agreements, ordinances, and regulations that governed his employment.  *Id.* at ¶¶ 70-71.  Specifically, Plaintiff alleges that the timeline from when the administration investigative process was initiated to the day he was terminated was a total of 221 days which violated applicable policies and rules.[10]  *Id.* at ¶ 45. Plaintiff alleges that the City "condoned, created, and manifested bias in creating allegations" against him despite evidence to the contrary, *i.e.,* that Interim Chief Medina claimed Plaintiff had improperly opened the door to the arrestee's apartment despite evidence and testimony that demonstrated otherwise; that Interim Chief Medina and Detective Burton incorrectly claimed Plaintiff's statements and testimony about the arrest contradicted lapel videos despite having evidence to the contrary.  *Id.* at ¶ 74.  Last, Plaintiff alleges that an "after-the-fact" DOJ

---

[10] *See* fn. 5, *supra.*

investigation into the November 17, 2019, arrest, discussed that the issue of "probable cause" for the arrest was not as clear cut as Detective Burton's investigative report indicated and demonstrates that the investigation against him was improper and biased.[11]  *Id.* at ¶¶ 54, 75.

In their Motion, Defendants argue that Plaintiff's breach of contract claim, though nominally different from the disciplinary proceedings, is based on factual issues previously litigated and is therefore precluded by collateral estoppel.  Doc. 9 at 6-8.  Defendants argue that in the underlying proceedings, Plaintiff specifically raised the issue of the City Defendant's reliance on his performance at the scene of the arrest and whether he had probable cause for a warrantless entry and arrest, as well as his untruthfulness in reporting his actions during the arrest incident discovered through the course of the investigation.  *Id.*  Defendants argue, therefore, that the factual issues related to the disciplinary action taken against Plaintiff were previously addressed in the proceedings before City Personnel Board where the standard for upholding discipline and consideration of the evidence, including the investigation, is just cause.  *Id.*  Defendants argue that although Plaintiff's breach of contract claim based on bias and an untimely investigation and disciplinary process were not raised during the City Personnel Board Hearing, the factual basis for Plaintiff's breach of contract claim was addressed and necessarily determined under the just cause analysis in the underlying proceedings, and therefore his breach of contract claim is barred by collateral estoppel and should be dismissed for failing to state a claim upon which relief can be granted.  *Id.*

Plaintiff asserts that neither res judicata nor collateral estoppel preclude his breach of contract claim because there has been no final judgment on the merits.  Doc. 15 at 3-6.  Plaintiff asserts that his breach of contract claim is separate and distinct from the administrative

---

[11] *See* fn. 6, *supra.*

grievance and appeal and was never litigated.  *Id.*  Plaintiff asserts that the instant claims are grounded upon rights or liabilities encompassed by the standard operating procedures ("SOP") and not as part of the collective bargaining agreement ("CBA").  *Id.*  Plaintiff asserts that promises and agreements made by the SOP created an employment agreement independent of the CBA and that a determination as to whether the City breached its SOP was not addressed by the administrative process.  *Id.*  Plaintiff asserts that the SOP issues were not considered and there was no prior litigation on this aspect of Plaintiff's Complaint.  *Id.*  Plaintiff asserts that simply addressing the question of just cause does not preclude the instant claims for breach of contract.  *Id.*

Applying New Mexico law regarding collateral estoppel and its application to administrative and judicial proceedings, there is no dispute that Plaintiff, the party against whom collateral estoppel is being asserted, was a party to the underlying proceedings.  The question, therefore, is whether Plaintiff's breach of contract claim concerns the same ultimate issues which were actually litigated and necessarily determined in the underlying proceedings. Here, Plaintiff invokes a different governing employment policy, the SOP verses the CBA, as the basis of his breach of contract claim, but in so doing relies on factual issues which were actually litigated and necessarily determined to support just cause in the grievance and judicial proceedings.  For instance, in support of his breach of contract claim pursuant to the SOP, Plaintiff alleges that Defendants Medina and Burton violated investigatory policies and procedures when they created allegations and manifested bias about Plaintiff's performance and honesty and misrepresented and/or omitted evidence in the investigative report that supported Plaintiff's statements about the arrest incident.  In particular, Plaintiff disputes investigatory findings about how the arrestee's door was opened, the lapel video evidence, and when Plaintiff

spoke to the security guard.  These factual issues, however, were actually litigated and

necessarily determined in the underlying proceedings.  *See Mascarenas,* 274 P.3d at 789

(explaining that collateral estoppel applies to factual issues actually litigated and necessarily

determined that were relevant to finding of just cause).  Thus, even if the underlying

proceedings were governed solely by procedures and policies that flowed from the CBA, the

factual basis of Plaintiff's breach of contract claim pursuant to the SOP concerns the factual

issues that were necessarily decided to support the determination in the underlying proceedings.

Further, Plaintiff's only other factual allegations to support his breach of contract claim - that

the investigation exceeded the required timeline and that it was biased and improper as

"confirmed by the DOJ independent investigation" - are not well-pled.[12]

Based on the foregoing, the Court finds that Defendants have made a prima facie

showing that collateral estoppel precludes Plaintiff from relitigating the factual predicates of his

breach of contract claim.  Given this finding, the burden shifts to Plaintiff to proffer

controverting facts showing that he did not have a full and fair opportunity to litigate the

ultimate issues of fact in the underlying proceedings relevant to his breach of contract claim.

Plaintiff argues only that the issue of just cause does not preclude the instant claim for breach of

contract.  This argument, however, is without merit because Plaintiff's success on a breach of

contract claim is dependent on a determination that Plaintiff was terminated without just cause.

*See Salguero v. City of Clovis,* 2003 WL 27385256, *8 (D.N.M. April 22, 2003), *aff'd* 366 F.3d

1168 (10th Cir. 2004) (precluding breach of contract claim based on collateral estoppel because

success of claim was dependent on finding plaintiff was terminated without just cause and the

issue of just cause had already been actually litigated and necessarily decided); *see also Chavez*

---

[12] *See* fns. 5 and 6, *supra.*

*v. City of Albuquerque, et al.,* 952 P.2d 474, 479-80 (N.M. App. 1997) (holding that decision by city's grievance board was a final judgment for purposes of precluding breach of contract claim where contract claim and grievance proceedings both challenged the justification for termination, both relied upon related facts, and grievance proceeding was exclusive means to claim that a job termination violated an municipal employee's contractual rights).  Moreover, the underlying record supports that Plaintiff had a full and fair opportunity to litigate the factual issues relevant to the investigation and the subsequent disciplinary action taken against him that form the basis of his breach of contract claim here.

In sum, because collateral estoppel bars Plaintiff from relitigating the factual predicates related to the investigation and disciplinary action taken against him, Plaintiff cannot prevail on his breach of contract claim.  The Court, therefore, finds that Defendants' Motion to Dismiss Count I of Plaintiff's Complaint – Breach of Contract - based on collateral estoppel is well taken and **GRANTED**.

### (2)   42 U.S.C. § 1983 Claims

In Count III of Plaintiff's Complaint, Plaintiff alleges 42 U.S.C. § 1983 violations adverse to Defendant Medina.  Plaintiff alleges that Defendant Medina knowingly violated Plaintiff's procedural due process rights under the United States and New Mexico Constitutions by failing to provide fair pre- and post-termination procedures, including an unbiased and accurate investigation.  Doc. 1-2 at ¶ 97.  Plaintiff alleges that Defendant Medina knew or should have known that bias existed at and throughout the pre-termination phase; that he knowingly violated the City's Personnel Act; that he ignored procedural and investigatory rules; that he was motivated to impress upon the DOJ a strong-armed approach to disciplining; and that he disparately disciplined officers.  *Id.* at ¶¶ 98-101.  Plaintiff alleges that Defendant

Medina's conduct "knowingly or recklessly deprived Duran of the fundamentals guaranteed by the Due Process Clause and the policies, procedures, guidelines and rules effective at that time." *Id.* at ¶ 102.  Plaintiff alleges that Defendant Medina's due process violations would "shock the conscience."  *Id.* at ¶ 103.

In support, Plaintiff alleges that Defendant Medina (1) misrepresented evidence that Plaintiff engaged in certain acts; (2) accepted and furthered known misrepresentation of material facts; (3) knowingly ignored and omitted material facts that would exonerate Plaintiff; (4) failed to consider the DOJ IMR report evaluating the investigation; (5) failed to confer with the District Attorney or the Assistant District Attorney for clarification of case law; (6) failed to supervise APD's IA Unit to conduct a fair, lawful and unbiased investigations in a timely manner; (7) advised the media that he was meeting DOJ IMR directives and expectations by terminating APD employees; and (8) failed to review material information in reference to the DOJ reviews, recommendations and failures of the department and compliance requirements. *Id.* at ¶ 103.  Plaintiff alleges that the "DOJ made clear that the termination of [Plaintiff] was unnecessary and the decision of misconduct was misplaced and incorrect."  *Id.* at ¶ 105.

In Count IV of Plaintiff's Complaint, Plaintiff alleges 42 U.S.C. § 1983 violations adverse to Defendant Burton.  Plaintiff similarly alleges that Defendant Burton intentionally, knowingly, and recklessly violated Plaintiff's rights under the United States and New Mexico Constitutions and violated the City's Personnel Act by failing to provide fair pre- and post-termination procedures, including an unbiased and accurate investigation.  Doc. 1-2 at ¶ 115. Plaintiff alleges that Defendant Burton was not a disinterested and unbiased investigator and her other interests and extraneous influences, including the perceived expectations of leadership and bias and animus, improperly influenced and inspired the investigation and report.  *Id.* at ¶ 116.

Plaintiff alleges that Defendant Burton knew or should have known bias existed at and throughout the investigatory pre-termination phase, and that the Investigation Report was incorrect, misleading, and misrepresentative. *Id.* at ¶ 117. In support, Plaintiff alleges that Defendant Burton (1) intentionally and knowingly misrepresented circumstances and facts during and regarding the interview with Plaintiff; (2) presented an Investigation Report falsely framing and misstating facts, responses, and events; and (3) intentionally and knowingly omitted relevant and material facts that would exonerate Plaintiff in the report to the City. *Id.* at ¶ 120.

### (a)      Res Judicata

In their Motion, Defendants argue that the elements of res judicata are satisfied with respect to Counts III and IV of Plaintiff's Complaint because there was a final judgment on the merits in the underlying proceedings, the identity of parties or privies are the same, and the due process claims raised here were addressed in the prior litigation. Doc. 9 at 12-16. Defendants argue that Plaintiff's due process claim based on Defendants Medina and Burton's alleged misrepresentation and omission of certain facts was raised and litigated on appeal before the Second Judicial District Court, and that the state district court determined that the evidence relied upon in the investigation constituted substantial evidence to support the disciplinary action taken. *Id.* Defendants further argue that Plaintiff's due process claim based on lack of notice and opportunity to respond also was raised and litigated on appeal and that the state district court discerned no due process violation. *Id.* Last, Defendants argue that although Defendants Medina and Burton were not named in the underlying proceedings and are named here in their individual capacities, Plaintiff's Complaint nonetheless alleges due process violations against them in their official capacities and that they are so identified in interest with

the City of Albuquerque that their interests represent the same legal right.  *Id.*  As such,

Defendants argue that Defendants Medina and Burton are in privity with the City of

Albuquerque such that the parties here are the same as in the underlying administrative

proceedings.  *Id.*

      Plaintiff argues that res judicata does not preclude his due process claims against

Defendants Medina and Burton for several reasons.  To begin, Plaintiff argues that Defendants

Medina and Burton were not named in the previous litigation and he did not have a chance to

litigate his claims directed at their individual conduct.  Doc. 15 at 3-6.  Plaintiff further argues

that his claims in the present action are separate and distinct from the administrative grievance

and appeal such that there has been no final judgment.  *Id.*  Plaintiff argues that the instant

complaint and its due process claims are grounded upon rights and liabilities encompassed by

the "policies and standard operating procedures," as well as constitutional provisions, while the

prior grievance was based on rights and processes pursuant to a collective bargaining

agreement.  *Id.*  Plaintiff argues that the due process issue considered previously was whether

the administrative process met the due process requirements, which is distinct from the due

process claims raised here.  *Id.*  Plaintiff additionally argues that the prior due process claims

only addressed the just cause standard.  *Id.*  Plaintiff argues that his Complaint asserts facially

plausible claims to support his due process claims against Defendants Medina and Burton.  *Id.*

      Applying New Mexico law regarding res judicata and its application to administrative

hearings, the Court finds that res judicata does not bar Plaintiff's procedural due process claims

against Defendants Medina and Burton.  To begin, it is undisputed that Plaintiff's procedural

due process claims pursuant to 42 U.S.C. § 1983 were not raised in the underlying proceedings

and Defendants Medina and Burton were not parties in the underlying proceedings.  Moreover,

Defendants Medina and Burton are not in privity with the City of Albuquerque because in this case Plaintiff brings suit against them in their *individual* capacities.  *See generally Herrera v. City of Espanola*, 32 F.4th 980, 1001 (10th Cir. 2022) (explaining that the City was not in privity with the individual defendants in their individual capacities so as to be positioned to raise the affirmative defense for the individual defendants) (citing *Willner v. Budig*, 848 F.2d 1032, 1034 n.2 (10th Cir. 1988) ("Government employees in their *individual* capacities are not in privity with their government employer."); and *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1089 (D. Kan. 2007) (observing in context of discussing privity that individual defendants in individual capacity may "maintain unique interests" from their municipal employer))); *but see Ford v. N.M. Dep't of Pub. Safety*, 891 P.2d 546, 550 (Ct. App. 1994) (explaining that if two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has preclusive effects against the injured person in a subsequent action against the other). Because the claims here are different and the parties are not the same, the elements of res judicata are not satisfied.

**(b)  Collateral Estoppel**

In their Motion, Defendants argue that Plaintiff's procedural due process claims as alleged in Counts III and IV are barred by collateral estoppel.  Doc. 9 at 8-10.  Defendants argue that although Plaintiff did not specifically raise procedural due process claims pursuant to 42 U.S.C. § 1983 in the prior litigation, Plaintiff's claims are predicated on the procedural due process issues which were previously considered and actually determined in the prior litigation. *Id.*  Defendants argue that Plaintiff raised procedural due process issues in the underlying proceedings regarding the City Defendants' reliance on Plaintiff's untruthfulness about the

warrantless arrest incident and the biased, unfair, and improper investigation conducted as a result.  *Id.*  Defendants argue that Plaintiff also raised the issue of the City Personnel Board's alleged failure to consider certain misrepresented or omitted facts in the investigation concerning the actual legality of the arrest.  *Id.*  Defendants argue that the Second Judicial District Court considered the aforementioned issues, upheld the City Personnel Board's decision in its Final Memorandum Opinion and Order, and found no due process violations existed nor a failure to consider all relevant facts concerning the legality of the arrest.  *Id.*  Defendants, therefore, argue that Plaintiff had a full and fair opportunity to litigate his procedural due process claims both before the City's Personnel Board and later on appeal before the Second Judicial District Court.  Doc. 16 at 6-8.

Plaintiff argues that collateral estoppel does not apply because the procedural due process issue previously considered was whether the due process required in administrative proceedings was met and, therefore, is distinct from the issues related to his procedural due process claims raised here.  Doc. 15 at 5.  Plaintiff argues the claims presented here were not previously litigated, that Defendants Medina and Burton were not named as parties, and the administrative process did not afford Plaintiff the opportunity to fully and fairly litigate his claims directed at their individual conduct.  *Id.* at 6.

Applying New Mexico law regarding collateral estoppel and its application to administrative hearings, there is no dispute that Plaintiff, the party against whom collateral estoppel is being asserted, was a party to the underlying proceedings.  The question, therefore, is whether Plaintiff's section 1983 procedural due process claims against Defendants Medina and Burton concern the same ultimate issues of fact which were actually litigated and necessarily determined in the administrative and judicial proceedings.  Plaintiff argues that Defendants

Medina and Burton violated his procedural due process rights by intentionally and knowingly misrepresenting and/or omitting evidence regarding Plaintiff's actions during the arrest incident and investigation, that they knowingly omitted material facts that would have exonerated Plaintiff, that Defendant Medina failed to consider and review the DOJ IMR report which "made clear that the termination of Duran was unnecessary and the decision of misconduct was misplaced and incorrect," and that Defendant Medina advised the media that he was meeting DOJ IMR directives by terminating APD employees.  Doc. 1-2 at 24, 27.  Plaintiff's well-pled factual allegations in support of these claims, as previously discussed, were actually litigated and necessarily determined in the administrative and judicial proceedings.  Plaintiff's other factual allegations, those based on the monitor's findings and conclusions in the DOJ IMR, are not well-pled.[13]

Based on the foregoing, the Court finds that Defendants have made a prima facie showing that collateral estoppel precludes Plaintiff from relitigating the factual predicates of his section 1983 procedural due process claims against Defendants Medina and Burton. *Mascarenas*, 274 P.3d at 789.  The burden, therefore, shifts to Plaintiff to proffer controverting facts showing that he did not have a full and fair opportunity to litigate the factual issues raised here in support of his due process claims against Defendants Medina and Burton.  While it is undisputed that Defendants Medina and Burton were not named as parties in the underlying proceedings and Plaintiff's alleged 42 U.S.C. 1983 claims against them were not explicitly considered, Plaintiff cannot overcome that his allegations of due process procedural violations of unfairness and bias by Defendants are directly tethered to factual issues that were relevant to and necessarily determined by the City Personnel Board in making its determination.

---

[13] *See* fns. 5 and 6, *supra.*

*Mascarenas*, 274 P.3d at 789.  Further, the only way for Plaintiff to overcome the presumption of Defendants Medina's and Burton's honesty and integrity in the underlying proceedings is by relitigating the factual issues regarding his untruthfulness which have already been decided.  *See generally Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 746 (10th Cir. 1991) (a plaintiff "claiming bias on the part of an administrative tribunal must overcome a presumption of honesty and integrity in those serving as adjudicators.").  Last, Plaintiff has not provided the Court with any reason to doubt that the administrative and judicially reviewed proceedings failed to provide him with sufficient due process protections or that the proceedings were unfair or biased.  *See generally Columbia Financial Corp., v. Bowman*, 314 F.Supp.3d 1113, 1137 (D. Kan. 2018) (explaining that plaintiff could not show insufficient due process protections for purposes of claim preclusion where administrative proceedings were appealed and subject to full judicial review); *see also Paule*, 117 P.2d at 248.

In sum, the City Personnel Board made, and the district court affirmed, factual findings that negate Plaintiff's allegations raised here to support his procedural due process claims against Defendants Medina and Burton.  The Court, therefore, finds that Defendants' Motion to Dismiss Counts III and IV procedural due process claims based on collateral estoppel is well taken and **GRANTED**.

**(3)**      <u>**Fourteenth Amendment Due Process**</u>

In Count V of Plaintiff's Complaint, Plaintiff alleges violation of "Equal Protection Clause of the Fourteenth Amendment to the Constitution – Due Process."  Plaintiff alleges that Defendant City of Albuquerque violated due process procedures by failing to provide an unbiased investigation, apply policies and regulations, abide by instituted timelines, and follow pre-determination processes.  Doc. 1-2 at ¶¶ 129-130.  Plaintiff alleges that Defendant Burton

36

was improperly trained, had implicit and actual bias against him, and was not a disinterested investigator. *Id.* at ¶¶ 133-35. Plaintiff similarly alleges that Defendant Medina was not disinterested or an unbiased pre-determination decision maker. *Id.* at ¶ 139. Plaintiff alleges that Defendant Burton and Medina tainted the investigation and decision. *Id.* at ¶ 142. Plaintiff alleges that "[i]n creating unfounded and misrepresentative facts, the City's determinations crossed the due process line[.]" *Id.* at ¶ 140. Plaintiff alleges that the City did not investigate or terminate other officers for the same or similar conduct for which he was terminated.[14] *Id.* at ¶ 144. Plaintiff alleges that the circumstances of his termination was "outrageous and shocks the conscious [sic] boundary." *Id.* at ¶ 145.

In their Motion, Defendants argue that Plaintiff's claims based on due process violations of the Fourteenth Amendment are barred by res judicata and collateral estoppel. Doc. 9 at 5, 8-10, 10-12. Defendants argue that although Plaintiff did not raise claims under the Fourteenth Amendment of the United States, his claim here is predicated on the due process issues which were previously considered and actually determined in the prior litigation. *Id.* at 8-9. Defendants argue that here Plaintiff raises the same procedural due process violations, *i.e.,* that the City conducted a biased, targeted and untimely investigation, and that the investigation included misrepresented and/or omitted facts. *Id.* Defendants argue that Plaintiff's appeal before the Second Judicial District Court found no due process violations. *Id.* Defendants argue that the City afforded Plaintiff with notice and a full opportunity to vigorously litigate, including discovery, pretrial motions, a mechanism to compel and the testimony of witnesses, an opportunity to object to evidence, representation by counsel, evidentiary proceedings

---

[14] Elsewhere Plaintiff alleged that "[n]o other City employees were terminated or known to be disciplined for the subject arrest." Doc. 1-2 at ¶ 43. *See* fn. 4, *supra.*

presided by a qualified hearing officer, and a decision including full findings of fact and conclusions of law. *Id.*

Plaintiff argues that his Fourteenth Amendment due process claim is not precluded or subject to res judicata or collateral estoppel because the procedural due process issue previously considered was whether the due process required in administrative proceedings was met and, therefore, is distinct from the issues related to his procedural due process claims raised here. Doc. 15 at 5.

Applying New Mexico law regarding collateral estoppel and its application to administrative hearings, there is no dispute that Plaintiff, the party against whom collateral estoppel is being asserted, was a party to the underlying proceedings. The question, therefore, is whether Plaintiff's factual allegations in support of his Fourteenth Amendment procedural due process claim against Defendant City of Albuquerque concern the same ultimate issues of fact which were actually litigated and necessarily determined in the underlying proceedings. For reasons previously discussed, the Court finds that the factual allegations Plaintiff relies on to support his Fourteenth Amendment procedural due process violation were actually litigated and necessarily determined in the administrative hearing. *Mascarenas*, 274 P.3d at 789; *Hicks*, 942 F.2d at 746. Additionally, Plaintiff's reliance on the monitor's findings and conclusions in the DOJ IMR to support his other factual allegations are not well-pled.[15] Further, Plaintiff has not provided the Court with any reason to doubt that the administrative and judicially reviewed proceedings failed to provide him with sufficient due process protections pursuant to the Due Process Clause of the Fourteenth Amendment. *See generally Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 482 (1982) (summarizing that procedure involving a hearing on the merits before

---

[15] *See* fns. 4, 5 and 6, *supra.*

an agency board with argument and evidence followed by judicial review was sufficient under the Due Process Clause); *see also Loudermill*, 470 U.S. at 546 (holding that pursuant to the Due Process Clause "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *Phelps v. Hamilton*, 122 F.3d 1309, 1322 (10th Cir. 1997) (in determining whether the state courts' judgments were fundamentally flawed, "we may only examine whether the state proceedings satisfied 'the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.'" (citing *Kiowa Tribe of Okla. v. Lewis*, 777 F.2d 587, 591 (10th Cir. 1985) (quoting *Kremer*, 456 U.S. at 481))).

Here, the City Personnel Board made, and the district court affirmed, factual findings that negate Plaintiff's allegations to support his procedural due process claims against Defendant City of Albuquerque. The Court finds, therefore, that Defendants' Motion to Dismiss Count V's Fourteenth Amendment procedural due process claim based on collateral estoppel is well taken and **GRANTED**.

## 2. Failure to State a Claim

The Court next addresses Defendants' arguments that Count II of Plaintiff's Complaint, along with claims of substantive due process and equal protection claims found in Counts III, IV and V of Plaintiff's Complaint, all fail to state a claim upon which relief can be granted and should be dismissed.

### a. Wrongful Employment Practices in Violation of Public Policy

In Count II of his Complaint, Plaintiff alleges common law wrongful employment practices in violation of public policy. Plaintiff alleges that Defendants required him to provide a report about the arrest incident and ordered him to provide testimony during the investigation

of the arrest event which Plaintiff alleges APD used to support a "predetermined termination decision."  Doc. 1-2 at ¶ 83.  Plaintiff alleges he was trained by Defendants and was truthful in his reporting and testifying about the arrest incident, and that Defendants used his training against him and manipulated his responses to create a narrative and desired outcome.  *Id.* at ¶¶ 84, 85.  Plaintiff alleges he was wrongfully terminated for providing testimony and participating in the investigation and that his termination was against public policy in New Mexico.  *Id.* at ¶¶ 87, 88.

Defendants' Motion argues that Count II fails to state a claim upon which relief can be granted.  Doc. 9 at 16-17.  Defendants argue that Plaintiff has not alleged that Defendants' immunity to suit has been waived for a claim of retaliatory discharge by any provisions of the New Mexico Tort Claims Act and, therefore, this claim should be dismissed as a matter of law. *Id.*

Plaintiff argues that he pleads in his Complaint that the SOP prohibited retaliation and that he was terminated for retaliatory reasons and motivations.  Doc. 15 at 6.  Plaintiff, therefore, argues that his Complaint sets forth sufficient allegations for wrongful retaliatory discharge under breach of contract.  *Id.*

In their Reply, Defendants argue that Plaintiff misleads the Court by asserting facts in his Response not plead in his Complaint.  Doc. 18 at 8-9.  Defendants argue that Plaintiff's Complaint is void of any facts to support a wrongful retaliatory discharge claim and fails to mention any of the elements of an implied breach for contract claim.  *Id.*  Defendants further argue that New Mexico law is clear that retaliatory discharge is a remedy available only to at-will employees who lack the "just cause" protection an employment contract creates, and such cannot be brought under a breach of contract framework.  *Id.* Defendants argue that here

Plaintiff's employment with the City, as a member of the Albuquerque Police Officers' Association, was regulated by the terms of the CBA.  *Id.*  As such, Defendants argue Plaintiff cannot allege a retaliatory discharge claim at all, and the theory of a retaliatory discharge under an implied contract is simply not a viable claim.

New Mexico recognizes a common-law cause of action for retaliatory discharge.  *See Chavez v. Manville Prods. Corp.*, 777 P.2d 371, 375 (N.M. 1989).  For a plaintiff to recover for common-law retaliatory discharge, the plaintiff " 'must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn.'" *Shovelin,* 850 P.2d at 1006 (quoting *Chavez,* 777 P.2d at 375).  The employee also must show by a preponderance of the evidence that there is a causal connection between the employee's actions and the employer's retaliatory discharge.  *Shovelin,* 850 P.2d at 1006.  If the employee meets this burden, the employee is entitled to recover damages for pecuniary loss and for emotional distress.  *Id.*  In New Mexico, retaliatory discharge is a "narrow exception to the rule of employment at will," and courts have "refused to expand its application."  *Shovelin,* 850 P.2d at 1007.  An action for retaliatory discharge is available only to at-will employees, and not to those with an employment contract.  *See Silva v. Am. Fed'n of State, Cnty. and Mun. Emps.*, 37 P.3d 81, 85 (N.M. 2001); *see also Salazar v. Furr's, Inc.*, 629 F. Supp. 1403, 1409 (D.N.M. 1986) (explaining that when an employee already has protection against an employer's breach of public policy the tort of retaliatory discharge is unnecessary and will not be recognized).

Applying this legal standard here to Plaintiff's alleged "common law wrongful employment practices in violation of public policy," it is undisputed that Plaintiff was not an at-will employee and that his termination was supported by just cause.  This cause of action,

41

therefore, is not available to him.  As such, Defendants' Motion to Dismiss Count II is

**GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief

may be granted.

        **b.**    <u>**Substantive Due Process**</u>

     Defendants argue that Plaintiff's claims against Defendants Medina and Burton for

substantive due process violations fail because Plaintiff does not allege the elements necessary

to sustain such a claim against them.  Doc. 9 at 17-19.  Defendants argue that to satisfy the

difficult test for substantive due process violation, Plaintiff must demonstrate facts that truly

shock the conscience or "which amount to one of those 'truly horrendous situations' of

government abuses."  *Id.*  Defendants argue that here Plaintiff alleges bias, "clandestine

motive[s]," and "unfair behavior," but does not allege facts that truly shock the conscience or

support arbitrary action taken by government actors.  *Id.*

     Plaintiff argues that the interview Defendant Burton conducted was "unprofessional and

biased"; that the DOJ IMR confirms that the investigation regarding the arrest incident was

untimely, violated policies and procedures, and was improper and biased; that Defendant

Medina misrepresented lapel video evidence; that Defendant Burton misrepresented lapel video

evidence regarding when Plaintiff spoke to the security guard; and that Defendant Medina

disparately disciplined officers.  Doc. 15 at 7-10.  Plaintiff argues that assuming as true all well-

pleaded facts and drawing all reasonable inferences in his favor demonstrate that Defendant

Medina's and Burton's conduct was "abusive, shocking, and egregious."  *Id.*

     A public employee with a property interest in continued employment has a substantive-

due-process right not to be terminated for arbitrary or capricious reasons. *Curtis v. Okla. City*

*Pub. Schs. Bd. of Educ.,* 147 F.3d 1200, 1215 (10th Cir.1998) (quoting Tenth Circuit authority

for the proposition that "[i]n order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach").  A substantive-due-process claim, if viable, requires assessing whether a governmental action is arbitrary, irrational, or shocking to the contemporary conscience.  *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.,* 341 F.3d 1197, 1200–01 (10th Cir. 2003); *Tonkovich,* 159 F.3d at 528.

To begin, as repeatedly discussed herein, the factual allegations Plaintiff relies upon to support his substantive due process claims against Defendants Medina and Burton have either been actually litigated and necessarily determined or are not well-pled.[16]  But even if all of the allegations were true, the determination that there was just cause for Plaintiff's termination precludes any substantive due process claim because when there is a rational basis for a decision, it is necessarily neither arbitrary nor capricious.  *Salguero*, 2003 WL 27386256, at *9; *see also Valencia v. Board of Regents, University of New Mexico*, 2019 WL 5698169, *10 (D.N.M. Nov. 4, 2019) (finding plaintiff had not made out a substantive due process violation where ultimate justification of termination offered sufficient explanation for administration's actions).  Here, it is undisputed that Plaintiff's termination was the result of an investigation that was initiated and conducted based on a complaint the arrestee filed with the Civil Police Oversight Agency.  Thus, the investigation into the arrest incident was not arbitrary or capricious and was facially justified.  Moreover, the ultimate justification for Plaintiff's termination, his untruthfulness uncovered during the investigation, offers a sufficient explanation for the disciplinary action taken by Defendants.  *Id.*

---

[16] *See* fns. 4, 5 and 6, *supra*.

In sum, the Court finds that Plaintiff has not made out a substantive due process violation against Defendants Medina and Burton.  As such, Defendants' Motion to Dismiss Counts III and IV substantive due process claims is **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### c. <u>Equal Protection</u>

Defendants argue that Plaintiff's Complaint fails to allege the necessary elements to sustain an equal protection claim.  Doc. 9 at 19-21.  Defendants argue that Plaintiff appears to be claiming he is a class of one, *i.e.,* he was individually denied equal protection by the application of the terms of the CBA by the City Defendant's conducting a "biased, targeted, unfair investigation" that resulted in his termination.  *Id.*  Defendants argue that Plaintiff has not alleged discriminatory animus as it pertains to his equal protection claim, and while Plaintiff has alleged that City Defendants targeted him for disparate treatment, he has not identified or alleged how City Defendants have done so that would give rise to the necessary requirements for an equal protection claim.  *Id.*  Defendants argue that Plaintiff has failed to allege that there is no rational basis for the difference in treatment.  *Id.*  Defendants argue that because Plaintiff has not alleged an element of intentional or purposeful discrimination in the application of the policy as to invoke the equal protection clause as an individual, Plaintiff's claims for equal protection violation fails.  *Id.*  Finally, Defendants argue that since Plaintiff cannot assert a constitutional claim for equal protection either as a class of one or a non-protected class, Plaintiff's claims for violation of the Equal Protection Clause fail to state the required elements to sustain the claim and it should be dismissed with prejudice.

Plaintiff argues that he has asserted sufficient facts to support a class-of-one claim alleging dissimilar treatment from others similarly situated and an absence of a rational basis for

the difference in treatment.  Doc. 15 at 10-12.  Plaintiff points to allegations in his Complaint, *inter alia*, that no other City employees were terminated or known to be disciplined for the subject arrest; that the DOJ IMR indicated the issue of probable cause was a close call; that the City improperly executed its policies in an effort to impress upon the DOJ a strong-armed approach to disciplining employees; that the City, by and through its employees, failed to abide by required processes, including an unbiased investigation, application of policies and regulations, abidance by instituted timelines, and determination processes; and that the City made the discretionary act of appointing Defendant Burton the IA investigator, who was improperly trained and had implicit and actual bias against Plaintiff.  *Id.*

"The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying 'any person within its jurisdiction the equal protection of the laws.' " *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (*quoting* U.S. Const. amend. XIV, § 1).  The Equal Protection Clause "creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799 (1997).  "[T]he essence of the equal protection requirement is that the state treat all those similarly situated similarly," *Bartell v. Aurora Pub. Schs.,* 263 F.3d 1143, 1149 (10th Cir. 2001) (quotations omitted), with its "central purpose [being] the prevention of official conduct discriminating on the basis of race [or other suspect classifications,]" *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).  As such, equal protection only applies when the state treats two groups, or individuals, differently.

To survive under a class-of-one theory, a plaintiff must prove that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The United States Supreme Court, however, has held that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008) ("our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context."); *Kelly v. City of Albuquerque*, 542 F.3d 802, 813 (10th Cir. 2008) ("more to the point, the [Supreme] Court recently held that 'the class-of-one theory of equal protection does not apply in the public employment context'").

Here, therefore, while the Court has repeatedly stated throughout that the factual predicates Plaintiff relies upon to make his claims have been actually litigated and necessarily decided and/or are not well-pled,[17] even if they might be true, it does not overcome the Tenth Circuit and Supreme Court holdings which have found that equal protection class of one claims are not cognizable in the public employment context.

Accordingly, Defendants' Motion to Dismiss Count V's equal protection claim is **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### 3.   Other Matters

Defendants argue and Plaintiff concedes that the City of Albuquerque is the properly named party as the governing body of APD, which is not a suable entity. *See Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381 (10th Cir. 1992) ("Defendants correctly state that

---

[17] *See* fns. 4, 5 and 6, *supra*.

police departments such as . . . APD are not suable entities under § 1983, because they lack legal identities apart from the municipality.")

Having determined that Defendants' Motion to Dismiss should be granted based on grounds of collateral estoppel or Plaintiff's failure to state a claim upon which relief can be granted, the Court need to not address Defendants' argument regarding Plaintiff's claim for punitive damages.

### C.   Motion to Amend

In his Response, Plaintiff states that in the event the Court finds he has failed to present plausible facts supporting any of his claims, that he be granted leave to amend his complaint to include "the addition of detailed information about the dates and purpose of the administrative grievance and appeal and the specific and additional details of the investigation."  Doc. 15 at 3.

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir.1999), *quoted in Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

The Court finds granting leave to amend would be futile.  To begin, Plaintiff has alleged certain causes of action which are not available to him, *i.e.,* common law wrongful employment practices in violation of public policy, substantive due process, and class-of-one equal protection claim.  Next, Plaintiff's other causes of action, albeit presented through various legal theories and in an attempt to recharacterize Defendants' authorized actions as biased and improper, at their core attack the investigation of the arrest incident and the subsequent disciplinary action taken against Plaintiff – the very bases of his grievance before the City

Personnel Board and his appeal before the Second Judicial District Court.  Moreover, the well-pled factual allegations Plaintiff relies upon to support his various legal theories here have been actually litigated and necessarily decided, *i.e.,* whether Plaintiff had probable cause to make the arrest and its relevance in his termination, whether Plaintiff accurately represented in the police report and criminal complaint the actions he took and the sequence of events during the arrest incident, whether Plaintiff provided a truthful account of his actions and the events in the subsequent IA investigation, whether substantial evidence supported a finding of Plaintiff's untruthfulness about his actions and the sequence of events during the arrest incident, whether the administrative proceedings complied with due process requirements, and whether the City Personnel Board abused its authority or acted unreasonably in terminating Plaintiff. Additionally, as noted throughout the Court's analysis, Plaintiff's other factual allegations regarding the untimeliness and the biased, tainted, and improper nature of the investigation as "confirmed by the DOJ IMR" are not well-pled and in fact are contradicted by properly considered documents he references in support.[18]  In sum, because the elements of collateral

---

[18] The Court cautions Plaintiff's counsel about her selective and, at times, inaccurate citation to the record.  Counsel's statements that no other City employees were disciplined for the subject arrest, that the IA investigation was somehow not timely, and that the DOJ IMR reached certain conclusions when in fact it hadn't, are a stretch and contradicted by the record.  *See supra*, fns 4, 5, 6.  Rule 11 of the Federal Rules of Civil Procedure states in pertinent part:

> (b)  **Representations to the Court**.  By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(3).  Rule 11 goes on to state that "[i]f after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is reasonable for the violation."  Fed. R. Civ. P. 11(c)(1).  Rule 11 clearly provides that an attorney may be sanctioned for signing a pleading without first conducting a "reasonable inquiry." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 541, 111 S.Ct. 922, 928, 112

estoppel are met with respect to Plaintiff's remaining claims, *i.e.,* breach of contract, 42 U.S.C.

1983 procedural due process and Fourteenth Amendment procedural due process, they are

barred.

For these reasons, Plaintiff's motion for leave to amend is **DENIED**.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court finds that Defendants' Motion to Dismiss

Plaintiff's Complaint for Damages Arising From Wrongful Discharge, Improper Employment

Practices, Constitutional Violations, and Breach of Contract in Lieu of Answer is well taken and

is **GRANTED**.

**IT IS SO ORDERED.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**

---

L.Ed.2d 1140 (1991).  The "reasonable inquiry" requirement mandates that an attorney stop, think, and assure herself of the legal and factual basis of a pleading before signing and presenting it to the court. *See Olga's Kitchen of Hayward, Inc. v. Papo,* 108 F.R.D. 695, 701 (E.D. Mich.1985) (characterizing Rule 11 as the "stop and think" rule). The Court views Plaintiff's selective and at times skewed recitation of the record as the result of over-zealous advocacy rather than an effort to deliberately mislead the Court, and therefore the Court does not conclude that sanctions are appropriate.  The Court reminds counsel, however, to make the necessary "reasonable inquiry," and to "stop and think," when setting forth the legal and factual bases in future submissions to the Court.